**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| WILLIAM MAY, | Case No. 1:13-cv-599 |
| Plaintiff, | Beckwith, J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff William May filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On September 23, 2009, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of January 2, 2005, due to physical and mental impairments. (Tr. 119-22, 175-84). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On December 20, 2011, ALJ Robert Flynn held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 56-118). On February 21, 2012, the ALJ issued a partially favorable decision concluding that

1

Plaintiff was not disabled within the meaning of the Social Security Act prior to October 15, 2011; but that he became disabled on that date due to his age. (Tr. 33-55). Plaintiff now seeks judicial review of the denial of his application for benefits prior to October 15, 2011.

Plaintiff was born in 1956 and was 49 years old at his alleged onset date of disability. (Tr. 61). He has a college education and past relevant work as a drug addiction social worker, case manager, and telephone information clerk. (Tr. 64 111). He alleges disability primarily due to knee problems, gout, and depression.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative joint disease of the knees, left knee meniscus tear, hypertension, hepatitis C, obesity, gout, bipolar disorder, schizoaffective disorder, post-traumatic stress disorder, and a history of polysubstance abuse." (Tr. 40). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> He can lift up to 20 pounds occasionally and frequently lift or carry 10 pounds. He can stand/walk 4 hours out of an 8-hour workday and sit 6 hours out of an 8-hour workday. He can occasionally push/pull within the above lifting restrictions. He can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs. In addition, he can never kneel or crawl. He must also avoid concentrated exposure to environmental irritants, such as fumes, odors, dust, chemicals, and gases, as well avoid concentrated exposure to poorly ventilated areas. He must avoid all exposure to hazards, such as unprotected heights and the use of moving machinery. Further, the claimant is limited to work that involves simple, repetitive, and routine tasks, performed in a low stress work environment, defined as free of fast-paced production requirements; involving only simple work-related decisions; few work place changes; no interaction with

2

the general public; and only occasional interaction with co-workers and supervisors.

(Tr. 41). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that while Plaintiff is unable to perform his past relevant work, prior to October 15, 2011, significant other jobs exist in the national economy that Plaintiff could have performed including office helper and storage facility rental clerk. (Tr. 49). Accordingly, the ALJ determined that Plaintiff is not under disability, prior to October 15, 2011, as defined in the Social Security Regulations, and is not entitled to DIB and or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly weighing the opinion evidence; and 2) improperly evaluating Plaintiff's credibility. Upon close analysis, I conclude that Plaintiff's assignments of error are well-taken.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work;

4

and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Evaluation of the Opinion Evidence*

Plaintiff's first assignment of error asserts that the ALJ failed to properly weigh the opinion evidence. Specifically, Plaintiff asserts that ALJ erred in assigning little weight and/or only some weight to the findings of Plaintiff's treating sources. The undersigned agrees.

The record contains the following opinion evidence:

*a. Dr. Pomerory*

On March 7, 2011, Plaintiff was evaluated in the orthopedic clinic by Christopher Pomeroy, M.D. for osteoarthritis of the knees, left greater than right. (Tr. 583). That same day, Dr. Pomeroy completed a Lower Extremity Impairment Questionnaire wherein he reported treating Plaintiff for osteoarthritis of the knees. (Tr. 574). The doctor

identified positive clinical findings of limited range of motion in the knees bilaterally, tenderness in the left knee joint line, muscle weakness, and an abnormal gait. (Tr. 574-575). An x-ray of the bilateral knees also supported his diagnosis. (Tr. 575). Plaintiff's primary symptoms were constant pain in the left knee and decreased range of motion. (Tr. 576). Dr. Pomeroy indicated that Plaintiff needed assistance walking and used a right sided cane to ambulate. *Id.* Pain interfered with his ability to ambulate effectively, he required the help of a handrail to effectively climb stairs, and he required assistance to travel. (Tr. 577). Dr. Pomeroy opined that in an 8-hour workday, Plaintiff could sit for 4 hours total and stand/walk for 1 hour or less. (Tr. 577-578). His symptoms were frequently severe enough to interfere with his attention and concentration. (Tr. 579). Dr. Pomeroy estimated that Plaintiff would likely be absent from work more than three times a month as a result of his impairments or treatment. (Tr. 580).

  *b. Dr. Tisdale*

  On October 26, 2009, Plaintiff saw Dr. Tisdale at an initial visit to establish primary care. At that time, Plaintiff reported having bilateral leg and toe pain. (Tr. 392). Dr. Tisdale's examination revealed pitting edema in the bilateral lower extremities to the ankles, difficulties ambulating, difficulty stepping up onto the exam table, and difficulty rising from a seated position. (Tr. 394). Thereafter, Plaintiff continued to see Dr. Tisdale for knee problems.

  On April 13, 2011, Dr. Tisdale completed a Multiple Impairment Questionnaire wherein he reported treating Plaintiff for Hepatitis C, gout, bipolar disorder, hypertension, and coronary artery disease. (Tr. 625). Dr. Tisdale identified positive clinical findings of poor joint range of motion and cited diagnostic RNA results in support

6

of his diagnosis. (Tr. 625-626). Plaintiff's primary symptoms were decreased mobility, chronic joint pain precipitated by prolonged activity or prolonged sitting without movement, fatigue, and poor concentration. (Tr. 626). Dr. Tisdale opined that in an 8-hour workday, Plaintiff could sit for 2-3 hours, stand/walk for 1-2 hours, frequently lift up to 5 pounds, and occasionally lift/carry up to 10 pounds. (Tr. 627-628). He had significant limitations doing repetitive reaching, handling, fingering, or lifting because of fatigue with repetitive motion, poor balance, and a history of falls and he was moderately limited (defined as significantly affected, but not completely precluded) in the ability to use the upper extremities. (Tr. 628). Plaintiff's symptoms were constantly severe enough to interfere with his attention and concentration (Tr. 630). Dr. Tisdale opined that Plaintiff was incapable of tolerating even low work stress and found that during an 8-hour workday he required unscheduled breaks to rest multiple times per hour. *Id.* Dr. Tisdale estimated that Plaintiff would likely be absent from work more than three times a month. (Tr. 631).

*c. Dr. Anaya*

On December 22, 2010, Dr. Anaya completed a Psychiatric/Psychological Impairment Questionnaire wherein she diagnosed bipolar disorder and assigned Plaintiff a GAF[1] score of 51. (Tr. 486). Clinical findings included poor memory, sleep disturbance, delusions or hallucinations, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, time or place disorientation, catatonia or grossly disorganized behavior, social withdrawal or isolation, and illogical thinking or loosening

---

[1] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. A

7

of associations. (Tr. 488). Plaintiff was easily confused, distracted with limited ability to focus, and had symptoms of paranoia. *Id.* His primary symptoms were disorientation, confusion, inability to concentrate, mood swings, depression, and crying. (Tr. 489).

Dr. Anaya opined that Plaintiff was markedly limited (defined as effectively precluded) in the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; the ability to sustain ordinary routine without supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work related decisions; the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to be aware of normal hazards and take appropriate precautions; the ability to travel to unfamiliar places or use public transportation; and, the ability to set realistic goals or make plans independently. (Tr. 490-492). Dr. Anaya indicated that Plaintiff was incapable of tolerating even low work stress. (Tr. 493). Dr. Anaya estimated that Plaintiff would likely be absent from work more than three times a month as a result of his impairments or treatment. (Tr. 494).

*d. Dr. Scott*

On February 19, 2010, Dr. Scott evaluated Plaintiff at the request of the Social Security Administration. (Tr. 402-40). Dr. Scott reported that it was difficult to establish a

---

score of 51 indicates moderate difficulty in social, occupational, or school functioning.

8

rapport with Plaintiff because he was "rather suspicious and highly apprehensive," he was preoccupied with listening to voices outside the office, and it was difficult to calm him down in order to "even marginally participate in the evaluation." (Tr. 402). Dr. Scott observed that he appeared ill and his skin was sallow, he "displayed pain behaviors," and had difficulty moving from a seated to a standing position. *Id.* Dr. Scott's mental status examination revealed that Plaintiff's thoughts were tangential and he displayed loose associations; his speech was disorganized and difficult to follow; he became agitated when redirected; he was preoccupied when speaking and "gave little regard to the direction of the interview;" he was emotionally labile "moving from agitated to anxious to crying;" he displayed psychomotor retardation, limited energy, low frustration tolerance, and hopelessness/helplessness that often accompany depression; he maintained little eye contact and often looked about the room; he was "highly anxious;" he rocked in his chair to calm himself; he was preoccupied with his current difficulties and displayed paranoid ideation; he was not fully oriented to time and situation; he demonstrated limited understanding of the purpose of the examination; he displayed limited cognitive functioning; he had difficulty with memory; he had impaired judgment; and, he "demonstrated little insight" and "would require patience and reinforcement to cooperate in a treatment program." (Tr. 404).

Dr. Scott diagnosed schizoaffective disorder, bipolar type, posttraumatic stress disorder, and cocaine dependence in sustained remission, with a GAF score of 35[2]. (Tr. 406). Dr. Scott opined that Plaintiff was extremely impaired in the ability to relate to

---

[2] GAF scores between 31-40 indicate some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) *or* major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids

9

others, including fellow workers and supervisors, and he was markedly impaired in the ability to understand, remember, and follow simple instructions, the ability to maintain attention concentration, persistence, and pace, and in the ability to withstand the stress and pressure of day-to-day work activities. (Tr. 406-407).

    *e. Non-examining State Agency medical consultants*

The record also contains four assessments from state agency reviewing physicians and psychologists. Namely, Dr. Williams reviewed the record on behalf of the State and issued an opinion in March 2010. (Tr. 408-25). She noted that Plaintiff was diagnosed with schizoaffective disorder, anxiety, and substance abuse, but opined that Plaintiff was only mildly limited in activities of daily living, moderately impaired in maintaining social functioning, and had moderate difficulties in maintaining concentration, persistence, or pace. *Id.* Dr. Warren affirmed Dr. Williams's opinion in July 2010. (Tr. 437).

Additionally, in April 2010, Dr. Das opined that despite the severe degenerative joint disease in his left knee, Plaintiff was capable of a reduced range of light work with occasional climbing of ramps and stairs, kneeling, and crawling, and no climbing of ladders, ropes, or scaffolds. (Tr. 427-434). Dr. Holbrook affirmed Dr. Das's findings in July 2010. (Tr. 436).

In formulating Plaintiff's mental and physical RFC, the ALJ gave "some weight" to the opinions from treating physician, Dr. Tisdale (Tr. 46). He stated the opinions were based on Plaintiff's subjective complaints rather than appropriate medical findings. He also gave "some weight" to the opinions from treating orthopedic surgeon, Dr. Pomeroy,

---

    friends, neglects family, and is unable to work).

on the same basis. *Id.* The ALJ gave "little weight" to the opinions from treating psychiatrist, Dr. Anaya (Tr. 45). He stated the opinions were not supported by clinical and laboratory diagnostic findings. (Tr. 46). He also found the opinions inconsistent with the GAF score of 51. *Id.* The ALJ also gave "little weight" to the opinions from the Administration's own examining psychologist, Dr. Scott. (Tr. 47). He stated Dr. Scott relied on Plaintiff's subjective complaints rather than medical findings. *Id.* Finally, the ALJ stated that he gave "some weight" to the opinions from the non-examining state agency medical consultants. (Tr. 46-47). Plaintiff asserts that the ALJ's evaluation of the opinion evidence fails to comport with agency regulations and controlling law. The undersigned agrees.

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541,

11

544 (6th Cir.2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected.*" Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley,* 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416 .927(d)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) (3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004).

    The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96–2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544. The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[ ] meaningful review of the ALJ's application of the rule." *Id.* Only where a treating doctor's

12

opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547. Here, the ALJ's decision, at least in part, does not reflect an analysis of these factors.

With respect to Plaintiff's mental impairments, the ALJ assigned "little weight" to the finding of Dr. Anaya, Plaintiff's treating psychiatrist. As noted above, the ALJ determined that Dr. Anaya's "is not well-supported by medically acceptable clinical and laboratory findings and appears to be based heavily on claimant's self-reports, which have been shown to be not fully credible." (Tr. 46). The ALJ also noted that while Dr. Anaya reported numerous marked limitations, she also assessed Plaintiff a GAF score of 51, which suggests only moderate symptoms or limitations. (Tr. 46). In so concluding, however, the ALJ failed to properly consider the treatment notes from Lifepoint Solutions (where Plaintiff treated with Dr. Anaya and other therapists), Dr. Anaya's longitudinal treatment of Plaintiff as well as her objective findings.[3]

Notably, Dr. Anaya treated Plaintiff regularly for nearly a year. (Tr. 633-662, 990-97). Contrary to the ALJ's findings, Dr. Anaya's treatment notes (and supporting notes from Lifepoint solutions) contain ample evidence and clinical findings relating to Plaintiff's mental impairments. These include clinical findings such as poor memory,

---

[3] Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). *See* 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

sleep disturbance, delusions or hallucinations, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, time or place disorientation, catatonia or grossly disorganized behavior, social withdrawal or isolation, illogical thinking or loosening of associations, blunt effect, depressed mood, and flat effect. (Tr. 486-489, 633-662).

Moreover, Dr. Anaya's opinions are also consistent with the findings from the Administration's own examining psychologist, Dr. Scott, who opined Mr. May was markedly limited in numerous areas of mental functioning. (Tr. 406-407). These opinions are consistent with Dr. Scott's mental status findings, including evidence of tangential thoughts and loose associations, disorganized speech that was difficult to follow, agitation, preoccupations, emotionally lability, psychomotor retardation, limited energy, a low frustration tolerance, feelings of hopelessness/helplessness, little eye contact, anxiety, paranoid ideation, a limited understanding of the purpose of the examination, limited cognitive functioning, difficulties with memory, and impaired judgment and insight. (Tr. 404). As noted above, the ALJ must give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner,* 378 F.3d at 544. Such is the case here.

Furthermore, contrary to the findings of the ALJ, the fact that Dr. Anaya's (and/or Dr. Scott's) opinions were based on Plaintiff's self-reports does not provide an adequate basis to reject such findings. Notably, the Sixth Circuit Court of Appeals, citing *Poulin v. Bowen,* 817 F.2d 865 (D.C.Cir.1987), stated that:

14

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine .... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness .... When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen,* 874 F.2d 1116, 1121, (6th Cir.1989). In *Blankenship,* the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. *Blankenship,* 874 F.2d at 1121. Thus, interviews are clearly an acceptable diagnostic technique in the area of mental impairments and Dr. Anaya could rely upon the subjective complaints elicited during her treatment sessions with Plaintiff in formulating Plaintiff's functional restrictions. *See Warford v. Astrue,* No. 09–52, WL 3190756, at *6 (E.D .Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments).

Moreover, it is clearly established law that the opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years. *See Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir.1983). As detailed above, Dr. Anaya treated Plaintiff for a year and her findings were properly supported.

15

Accordingly, in light of the foregoing, the undersigned finds that the ALJ's evaluation of the opinion evidence is not substantially supported. As detailed above, the ALJ failed to properly consider the length of treatment and supportability of Dr. Anaya's opinions in his determination to assigned little weight to Dr. Anaya's findings. This matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law. On remand, the ALJ should also re-evaluate the opinion evidence relating to Plaintiff's physical impairments, as the finding of Plaintiff's treating physician also appears to be supported by objective evidence and therefore entitled to deference.

Additionally, Plaintiff's second assignment, that the ALJ improperly determined Plaintiff's credibility is also well-taken. In light of the finding that the ALJ failed to properly consider the opinion evidence, Plaintiff's second assignment of error should also be sustained and re-determined on remand in accordance with agency regulations and controlling law.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original

16

proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB and/or SSI benefits be **REVERSED** and this matter be **REMANDED,** consistent with this opinion, under sentence four of 42 U.S.C. § 405(g). As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                      *s/Stephanie K. Bowman*
                                      Stephanie K. Bowman
                                      United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM MAY,                                                          Case No. 1:13-cv-599

        Plaintiff,                                                    Beckwith, J.
                                                                       Bowman, M.J.
   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).